**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KYLE VAN VLACK*, Individually and on*
*behalf of all Others similarly situated,*

Plaintiff,

                              Case No:
                              216(b) Collective Action

v.

NINJARMM LLC, a foreign
for profit Corporation, dba
NINJAONE,

Defendant.
_____.

## COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE OVERTIME WAGE SECTION OF THE FAIR LABOR STANDARDS ACT (FLSA)

Plaintiff, KYLE VAN VLACK, individually and on behalf of all other similarly situated persons employed as inside sales representatives ("ISR") from the period of three years preceding the filing of this complaint through the date of trial who consent to their inclusion in this collective action herein sue Defendant **NINJARMM LLC**, DBA NINJAONE (hereinafter referred to as "Ninja", or Defendant), pursuant to 29 U.S.C. § 216(b), of the Fair Labor Standards Act (the "FLSA") and states as follows:

## RECITATION OF FACTS

1.     Plaintiff Van Vlack and the class of similarly situated current and former insides sales employees (ISR) all worked for Defendant under job titles including: Sales Development Representative (SDR), Account Manager or Account Executive and other various job titles used to describe persons who performed substantially the same requirements of an inside sales representative ("ISR"), and all worked at Defendant's physical offices, or after the Covid Pandemic, worked remotely and their work was directed from Defendant's multiple offices located in Clearwater, Florida, Austin Texas and San Francisco, California.

2.     The ISR's primary function was to use telecommunications such as telephones, email and technology to solicit businesses to purchase Ninja's IT tool and software on a subscription basis (SAAS).

3.     In addition, Ninja employed numerous ISR in the role of business development employees, titled as Sales Development Representatives (SDR) whose job it was to primarily develop warm business leads by soliciting businesses to attend computer demonstration appointments with Account Executives who then would attempt to negotiate and close sales or deals with them.

4.     Plaintiff Van Vlack, and the putative class of similarly situated employees were not compensated for all hours worked over 40 in each and every work week and were unlawfully and intentionally misclassified as salaried exempt

employees.

5.     Defendant Ninja has improperly and willfully withheld and refused to pay Plaintiff and all ISRs overtime wages and premiums for overtime hours worked in violation of the nation's federal wage law, the FLSA.  Defendant's employment and payroll records will demonstrably show that Plaintiff, and all ISRs were classified as salaried exempt employees with blatant and shocking disregard for the FLSA's overtime wage requirements for employers and corporations such as Defendant.

6.     At minimum, Defendant acted with reckless disregard for its obligations to pay ISR overtime premiums for all hours worked, but worse, willfully stole the hard earned and owed wages of many hundreds of its employees in the name of profits and minimizing labor costs.

7.     Ninja also concurrently and simultaneously willfully failed to accurately track and record ISRs work hours as mandated pursuant to federal regulation 29 C.F.R. § 516.

8.     Defendant knows that ISR fail the short test for the executive exemption since they do not supervise two or more full time employees, and their primary job duties are non-exempt sales duties and not management of the business or enterprise nor any department of Defendant.

9.     Defendant knew or should have known that ISRs do not meet the

administrative exemption, as their primary job duty does not in involve the use of discretion and independent judgment in matters of significance affecting the company and its management; and that their primary job duty is production and sales, typically non-exempt under the FLSA and as concluded by the DOL regulations and the DOL field operations handbook.

10.     Defendant has a comprehensive lead generation system such that inside sales representatives do not have to solely rely upon their own contacts and sources to generate sales.

11.     Defendant absolutely knows that its inside sales representatives (ISR) routinely worked overtime hours, as managers and supervisors witnessed the extra hours, managers and company officials saw and knew that ISR were accessing telephone systems, CRM databases, emails, and engaged in computer demonstrations outside the standardized mandatory corporate schedule.

12.     Defendant also knew that ISR performed work in the evenings and on weekends and even managers communicated with ISR about work outside the regular business hours.

13.     Defendant has willfully failed to pay Plaintiff and all similarly situated employees in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiff and similarly situated employees were not paid premium pay (aka overtime wages) for all hours worked in excess of forty (40) hours per week.

14.    Plaintiff Van Vlack, and the class of similarly situated employees did not and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendant's pay practices are not only unfair, but blatantly unlawful under the FLSA.

15.    In this pleading, the term "Inside Sales Representative" means any employee of Defendant working under the various titles of: Sales Development Representative (SDR), Account Executive (AE), Account Manager (AM) or any other job title of employees who performed substantially the same job of an inside sales representative ("ISR") working at or working remotely from home and reporting to Defendant's 3 offices in the United States in Clearwater, Florida, Austin, Texas and San Francisco, California.

16.    Inside Sales representatives employed as SDR in this class predominantly spend their days making outbound calls (cold calls), sending email solicitations, researching the internet and either making internet presentations or demonstrations and consummate to set appointments for Account Executives to attempt to sell their IT tool (SaaS) subscription service to businesses (B2B).

17.    The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proof, or persuasion.  Plaintiff reserves all rights to plead in the alternative.

## Jurisdiction & Venue

*18.*     This Court has subject matter jurisdiction over this action pursuant to

*28 U.S.C. § 1331*, because this action involves a federal question pursuant to the Fair

Labor Standards Act ("FLSA"), *29 U.S.C. § 216 (b)*.

19.     This Court is empowered to issue a declaratory judgment under 28

U.S.C.§§ 2201 and 2202.

20.     This Court has personal jurisdiction over the Defendant, because the

Defendant operates substantial business in Pinellas County, Florida and the damages

at issue occurred within this District, where Defendant maintained an office

throughout the relevant time period.

21.     Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b)

because the Defendant resides in this district and because a substantial part of the

events giving rise to the claims occurred in this District as Plaintiff was hired from,

supervised from and his work was directed by officers and managers from

Defendant's fixed office location located at 26750 US HWY 19 N STE 510,

CLEARWATER, FL 33761.

22.     The overtime wage provisions set forth in FLSA § 207 apply to

Defendant, as Ninja engaged in interstate commerce under the definition of the

FLSA.  Indeed, at all relevant times, Defendant engaged in interstate commerce

and/or in the production of goods for commerce within the meaning of FLSA Sec.

203 as a common business enterprise.  Additionally, Defendant earned more than $500,000 in revenue during the years 2019 to 2021 as well.

## The Parties

### Representative Plaintiff, Kyle Van Vlack

23.     Kyle Van Vlack now resides in Maine.  He was first hired to work for Defendant as an Inside Sales Representative under the title of SDR in May 2019 to work in Defendant's Clearwater, Florida office.

24.     Van Vlack worked from this office until the Covid Pandemic in March 2020, when he and all other ISR were sent to work from home remotely.  Van Vlack continued to work remotely from Florida in his home until he relocated to Maine and continued his employment until January 2022 still reporting to the Clearwater, Florida office.

25.     Plaintiff's work was highly supervised, micro-managed, and scrutinized on a daily basis by management in the Clearwater office.

26.     Plaintiff, like all other ISR, was required to meet certain metrics which gauged his performance and determined whether he would continue to have a job. This primarily included setting a minimum number of appointments with businesses for the Account Executives/Account Managers such as 24 or more per month.

27.     Plaintiff also had sales quotas and it was expected that his warm leads

and appointments for the Account Executives would lead to subscription sales revenues in the sum of upwards of $7,500 per month.

28.     According to the Ninja offer letter to Van Vlack he was provided a base salary of $35,000 plus a percentage to goal bonus plan stated as an On Target Earnings (OTE) in the sum of $15,000, which combined with the salary would provide an opportunity for Van Vlack to earn a total of $50,000 in compensation.

29.     Thus, as the compensation plan is laid out, Van Vlack, like all other ISR could earn a total sum in cash or gross compensation of 100%, with some percentage being the base pay and some percentage of bonus or set at a maximum amount by Ninja.

30.     The bonus component is paid out on a percentage to this target earnings goal on a monthly basis, such that if Van Vlack and any ISR hit 100% of the sales quota they would earn the target cash incentive maximum sum stated on a monthly basis, whereas if they hit 50% of the sales quota, they would only be paid 50% of this target cash bonus.

31.     However, since SDR like Van Vlack did not consummate the sales, all this bonus money was entirely contingent upon the actions of others.

32.     Later, SDR like Van Valck were paid a bonus of $100 per appointment set, clearly not a commission and not tied to the value of any sales.

***The Defendant***

33.     NINJARMM LLC, dba Ninjaone (perhaps now NINJAONE LLC) is a for profit Delaware company with world headquarters located in the San Francisco area at 500 N BRAND BLVD, SUITE 187, GLENDALE, CA 91203.

34.     Defendant may be served at its Clearwater office through its designated registered agent: NAJERA, ARMANDO, 26750 US HWY 19 N STE 510, CLEARWATER, FL 33761.

35.     Defendant operates from 3 US offices located in Glendale, CA, Austin TX and Clearwater, Florida from where ISR were hired from, reported to or worked at during the 3 years preceding the filing of this complaint to the present.

36.     Upon information and belief, Ninja employs approximately 1,000 employees working at or reporting to these 3 offices, including approximately 44 to 60 ISR working at any given time.

37.     Upon information and belief and research, Defendant Ninja employs inside sales employees (ISR) including account executives and SDR from these 3 offices.  At this present time, Defendant has posted on its website that it is hiring SDR and Account Managers in Clearwater and Austin, Texas with identical job descriptions.

38.     Inside Sales representatives (ISR) primarily worked from physical offices, including Clearwater, Florida, Austin Texas, and Glendale, California, but

upon information and belief, as of the Covid-19 pandemic, all currently employed ISR have primarily been reassigned and recruited to work remotely.

39.     Defendant Ninja is an employer within the definition of the FLSA, as it has revenues exceeding $500,000 annually in all applicable time periods, is involved in interstate commerce, and employs upwards of 1000 or more employees across the U.S.

40.     Given turnover, Plaintiff estimates that the putative class of similarly situated inside sales representatives to be in the range of 350  persons who worked as ISR within the preceding 3 years from the filing of this complaint, including 44 alone at any given time working at or reporting to the Clearwater, Florida office.

41.     Ninja was Plaintiff's employer within the meaning of 29 U.S.C. § 203(d).

## General Collective Action Allegations

42.     This collective action arises from an ongoing, longstanding, wrongful scheme by Defendant to willfully underpay and refuse to pay overtime wages to a large class of workers, the inside sales representatives (ISR), who Defendant knew, and knows still up through the filing of this complaint, routinely worked overtime hours without being paid for all hours worked.

43.     Defendant's unlawful pay practice applicable to all inside sales

representatives consisted of willfully misclassifying them as exempt employees and then making them suffer to work overtime hours without being paid a premium for all overtime hours worked.

44.    Management at a minimum clearly and without dispute "turned a blind eye" to the overtime hours worked by the inside sales reps, but specifically encouraged Plaintiff and all other ISR that they were to work as many overtime hours as necessary to hit the quotas, sales goals, and metrics.

45.    Ninja ran this overtime wage scheme for pure greed and to save many millions of dollars in labor costs and decrease expenses, all to the detriment of its inside sales representatives who slaved away working long hours without being paid for their hard work.

46.    Defendant no doubt made a calculated, willful decision to refuse to pay overtime wages under the risk that even if someone or many eventually made a claim for overtime wages, they would have benefited financially from the additional sweat and work of extra unpaid hours of its ISR in terms of increased sales, and the fact that the statute of limitations would run on claims before many would even assert their rights under the FLSA.

47.    As is often stated by Courts in similar FLSA overtime wage cases over the last 70 years, this is the classic case willful misclassification and a SCHEME of an employer to avoid it overtime pay obligations under the FLSA.

11

48.     Here, Van Vlack and all other similarly situated ISR were not being paid a fair wage for a fair day's work as the FLSA mandates and for which it was created.

49.     Despite being an international corporation, with employees throughout the United State of America, Defendant has blatantly, and willfully violated the FLSA by:  a) willfully refusing to pay overtime wages when they knew and were aware of employees working overtime hours; b) willfully permitting ISR, who Defendant knew or should have known were non-exempt employees, to suffer to work overtime without being paid the proper and lawful premium for all hours worked over 40 in each and every work week; and c) intentionally mislead ISR about the FLSA and meal break requirements automatically deducting 1 hour from their day for meal breaks even when ISR were working through some or all meal breaks and regardless of this fact.

50.     The FLSA does not require employees to have to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendant knows, or should know, that employees are working overtime hours.

51.     Here, Defendant has maintained for many years the application of unlawful pay practices and a history of either disinformation or intentionally silence about the FLSA overtime pay requirements.  The Defendant's employee manual is

noticeably silent about overtime pay, overtime laws, and without any stated company overtime policies, even for hourly employees.

52.   Defendant, throughout the preceding 3 years of the filing of this Complaint and currently as well, has been well aware of their inside sales representatives, including Plaintiff, routinely working overtime hours without being paid for all hours worked.

53.   Upon information and belief, all ISR in the Defendant's 3 US offices worked on similar compensation plans of a base pay and some percentage to goal incentive bonus paid on a monthly basis, and all were treated as exempt from overtime pay.

54.   Plaintiff's primary job duties are well recognized as typical non-exempt work duties.

55.   When hired, Van Vlack like all other ISR, was led to believe the position was an exempt salaried position, and that if he had to work overtime hours to hit quotas, the time would not be compensated, and he would not be entitled to overtime premiums.

56.   Plaintiff, like his fellow ISR, assumed his employer was complying with the FLSA and federal or state wage laws, and did not seek to challenge their classification as exempt from overtime.

57.   Plaintiff worked routinely after the ending time of his shift of 5:00 pm,

as well as working prior to the official start time of 8:00 am.

58.    The Clearwater office maintained an office schedule for all ISR from Monday to Friday, 8:00 am until 5:00 pm, a 9-hour workday, with a presumption that each ISR would take a full 1-hour work meal or lunch break.

59.    The ISR in Clearwater did not punch any time clock physically or electronically which tracked their start times, break times or ending times for the day pursuant to time tracking systems or programs used by companies across the US, nor any paper timesheets or timecards.

60.    The company policy was to strongly encourage ISR to work overtime hours, including on weekends which Plaintiff routinely did "Scrubbing" leads.

61.    More importantly though, it was made clear to Van Vlack and other ISR that he worked with that in order to maximize the bonus money incentive cash they could earn and meet sales or production goals or quotas that the job required, more than 40 hours per week of work was required, and Defendant knew it.

62.    Plaintiff like other ISR also at times attended the demonstrations and appointments set for AE or AM, which as well did lead to hours beyond 5:00 pm.

63.    It is also well known to Ninja that only those sales representatives who were working more than 40 hours, and many hours off the clock were the ones who reached the sales goals, the maximum target cash, and who were the most productive sales employees.

64.    Thus, Van Vlack and the other ISR were left with the dilemma and between a rock and a hard place:  either work overtime hours without pay and without complaining or filing claims, or fall short of sales goals, earn very small bonuses and risk being fired for lack of production and lack of sales.

65.    Throughout Plaintiff's term of employment before going remote when Covid hit on or about late March 2020, Van Vlack routinely came in early, stayed late and worked most of the days without a 1-hour uninterrupted meal break.

66.    He also routinely worked on weekends for many hours and was granted unfettered access to email, Salesforce, salesloft and the leads.

67.    Plaintiff earned bonuses which for him and all other ISR, was an important component of his overall income.

68.    Defendant intentionally and willfully led Plaintiff and all other ISR to believe that classifying them as exempt from overtime pay was a lawful pay practice, yet never disclosed or explained the justification or what if any exemption it was relying upon.

69.    Van Vlack and ISR were encouraged by Ninja to work as many overtime hours as they could or wanted in order to meet sales goals, and thus keep their jobs for want of production.

70.    Defendant also discouraged Plaintiff and all other ISR from complaining about not being paid for overtime hours worked and for not being able

to report and clock in all hours worked by telling them to focus on earning their bonuses and cash incentives, production goals and to just be thankful they had jobs.

71.    Van Vlack primarily handled outbound calls and solicitations using emails, rather than inbound leads from businesses seeking to sell Ninja's software (SAAS) services.

72.    Van Vlack spent hours on weekends and evenings searching the provided leads for the names and contact information of the persons in the business businesses to solicit, such as looking on LinkedIn, and doing research, as well as putting information into Salesforce.com, a process known as "Scrubbing the leads."

73.    All inside sales representatives were paid pursuant to the same common pay plan:   a base salary and eligibility for monthly bonuses on a sliding scale depending upon reaching the maximum target goal of 100% and decreasing as the production met less than 100% of the goals, or alternative with some multiplier based upon the production.

74.    Plaintiff, like all ISR in the Clearwater office, was given a set weekly corporate schedule of 45 hours per week, 9 hour days with the opportunity to take up to a 1-hour meal break.

75.    Plaintiff routinely worked through much of his 1-hour meal break, including working while eating at his desk, or taking a short break to eat and continuing back to work.

16

76.     At no time did Defendant explain that working through all or some of this 1 hour automatically deducted meal break was compensable overtime work hours and which should be reported and paid.

77.     Assuming like Van Vlack, all other ISR were paid on a salary basis, there was no real concern of ISR of not clocking their work times or break times since they were being paid the same salary each week regardless of the overtime hours or lack of meal breaks taken.

78.     Plaintiff found it necessary to stay after the ending shift time and start work earlier than the official start times, as well as working on weekends and put in these additional overtime work hours to complete his job duties and communicate with businesses in attempts to obtain sales.

79.     Plaintiff similarly performed work on weekends using his company laptop, answered, and sent emails, and such work was not foreclosed, prohibited, or discouraged by Defendant.

80.     Moreover, management knew of and encouraged ISRs to perform work outside the office or outside of business hours, to come in early and start working and to stay as late as they needed.

81.     Plaintiff, and all other similarly situated employees are currently now or have previously been covered under FLSA §207 as employees.

82.     Plaintiff routinely worked more than 40 hours in his workweeks, with

the knowledge, encouragement, and behest of Defendant, but was never paid a premium for all such overtime hours worked.

**THE PUTATIVE CLASS**

83.    Plaintiff brings this suit individually, and on behalf of all similarly situated persons composed of the following Class or collective similarly situated members:

**PROPOSED PUTATIVE CLASS:**

**All person working as inside sales representatives (ISR) under the titles of: Sales Development Representative (SDR), Account Manager, Account Executive, or any other job title used to describe persons whose primary job duty was inside sales, who are currently employed or were previously employed with NINJARMM LLC or NINJAONE LLC working from or reporting to offices in Clearwater, Florida, Austin Texas, and Glendale, California within the past three years preceding the filing of this lawsuit through to the date of trial.**

**COLLECTIVE FACT ALLEGATIONS**

84.    At the time of this filing, numerous other members of the putative class seek to join this action and demonstrate that there are others similarly situated who seek to join and claim their overtime wages.

85.    Plaintiff is able to protect and represent the Collective or putative Class or classes, and is willing and able, and consents to doing so.

86.    Plaintiff is a proper Class representative of all those similarly situated as he was employed by Defendant under the titles of Sales Development Representative (SDR), and Inside Sales Representative during his employment, and

because:  a) he solicited to sell Ninja's products, software, and services and including subscription services;  b) he was paid under the same common pay structure/plan applicable to all other inside sales representatives:  a base salary with monthly percentage to goal bonus plan and treated as an exempt employee under the FLSA; c) he routinely worked overtime without being paid a premium for the hours worked; and d) is familiar with Defendant's policies, procedures and unlawful pay practices.

87.    Upon information and belief, Defendant employed 100 or more ISR at any given time working from their homes or hired from and reporting to 3 specific offices in the United States, or whose work was controlled from these 3 offices and ultimately from the corporate office or headquarters located in Glendale, California.

88.    Upon information and belief, during the preceding 3 years all ISR were subject to a common unlawful pay practice and scheme of being willfully misclassified as exempt employees and not paid premiums for all overtime hours worked.

89.    Defendant's offer letters to inside sales representatives also demonstrate a common pay plan for inside sales reps:  a base salary, plus eligibility to earn a bonus stated as a percentage to goal of incentive cash or On Target Earnings (OTE).

90.    All inside sales representatives within this class described herein are now, and at all times within the preceding 3 years of the filing of this complaint were

treated as exempt employees and who were assigned to work 9 hour work days, Monday to Friday, and thus 45-hour work weeks.

91.    Upon information and belief, whenever Plaintiff and all other inside sales representatives worked prior to the scheduled shift time, stayed after the shift time ended, worked through any meal breaks, and worked on weekends as to which Defendant monitored, tracked and was fully aware of all employees exceeding 40 work hours, and even encouraged the additional work hours viewing such ISR as "go-getters".

92.    The Defendant maintained a company-wide policy throughout the relevant 3-year class period of willfully refusing to pay overtime wages or any premium pay for overtime hours worked for inside sales representatives despite, clear knowledge inside sales representatives have worked and continuing to work overtime hours, and as classified under the FLSA, should have been non-exempt employees automatically due such wages.

93.    Upon information and belief, all inside sales representatives are supervised by team leaders and other managers, who very closely monitor performance, scrutinize sales representatives and their performance, metrics, such as phone calls and production and report results to the corporate office under a structured, corporate controlled manner, and all of whom had knowledge of their teams working overtime hours.

94.     At no time during the relevant 3 year time period did Defendant formally discipline inside sales representatives, including Van Vlack for working off the clock overtime hours.

95.     Plaintiff and all other ISR were not selling retail products or selling software, SAAS in a retail industry.

## COUNT I

### FLSA VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202

96.     Plaintiff alleges and incorporates by reference all preceding paragraphs 1 through 95 of this Complaint and fully restates and realleges all facts and claims herein.

97.     Defendant has willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to compensate all inside sales representatives as required pursuant to the FLSA's overtime wage provision, Section 207.

98.     Plaintiff and the proposed class of similarly situated, comprised of all current and former persons who worked for Ninja as inside sales representatives, were denied overtime compensation pursuant to FLSA §207 as required to be paid by Defendant for all hours worked over 40 in each and every work week.

99.     Plaintiff and all those similarly situated are employees of Defendant

during their time as contemplated by 29 U.S.C. § 203.

100.   Defendant does not and cannot have a good faith basis for failing to pay Plaintiff and the class of inside sales representatives overtime pay, particularly here where it's such as basis and well-known requirement of the FLSA that inside sales reps are non-exempt employees and entitled to be paid premiums for overtime hours worked.

101.   Even assuming Defendant claims the application of the 207(i), Retail Sales Exemption, such an exemption cannot apply to all ISR on every pay period and every month unless the ISR's commissions for the month exceeded 50% of the total wages.

102.   Thus, less productive employees, and for many, never had any pay periods of months in which 50% or more of their compensation was in the form of Commissions.

103.   Moreover, SDR such as Van Vlack never sold the products and services, and never earned commissions.  By Defendant's own pay plan, SDR were paid a bonus, not a sales commission.

104.   Further, when SDR were paid $100 per appointment, this bonus was not and could never be classified as a commission under the FLSA, as it was not tied to the value of a sale or the price of the subscription services sold, and thus not included in the 207i exemption calculations as "commissions".

22

105.   Ninja also knew inside sales representatives were working overtime, encouraged it and with blatant disregard for the FLSA, chose not to pay them premiums regardless of any bonus sums they earned or whether the value of the bonuses or commissions exceeded 50% of their total monthly income.

106.   As clear evidence of the willful violation of the FLSA overtime requirements, and that the Defendant's overtime pay practice and policy was lacking in good faith compliance with the FLSA, at no time as required by the FLSA and the related DOL regulations under the CFR, did Defendant ever notate on paychecks the 207i exemption, but refused to pay any ISR overtime premiums regardless of the values of the bonuses earned or if no bonus was earned on a monthly basis.

107.   Further, Defendant was aware and clearly knew Plaintiff and the inside sales rep position was a non-exempt position, subject to the time tracking requirements of the FLSA, and automatically required to pay any non-exempt employee overtime premiums when they knew or should have known such employees worked any time over 40 hours in a work week.

108.   Plaintiff, and the class of similarly situated, are thus entitled to an equal sum in overtime wages owed at rates of one- and one-half times their regular rates of pay as liquidated damages. See *Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

109.   Defendants knowingly and willfully failed to accurately and fully track

the hours worked by Plaintiff and the class of similarly situated employees in violation of the FLSA and 29 CFR Part 576.

110.   Defendant encouraged inside sales representatives to work as many hours as they could to meet or exceed sales goals as long as they did not report more than 40 hours without prior approval, but meanwhile had direct or constructive knowledge of inside sales representatives working overtime hours and more hours than reported on their time sheets.

111.   The FLSA required Defendant to pay the overtime wages when they know employees "worked" over 40 hours in any work week and does not permit an employer to escape or nullify its overtime pay obligations by placing the duty on the employee to formally submit the hours and make a claim for overtime pay.

112.   Regardless, the entire company policies and procedures related to work hours are oppressive, misleading, and intended to discourage and prevent inside sales representatives from ever making a request or claim for overtime pay due to fear and intimidation of being terminated from employment.

113.   Defendant made clear to the inside sales representatives that they were not going to be paid overtime wages and that requesting such was going to subject them to heightened scrutiny, discipline and potentially termination of employment.

114.   Defendant has failed to make, keep, and preserve accurate time records with respect to each of its employees sufficient to determine their wages, hours, and

other conditions of employment in violation of the FLSA 29 USC 201 *et seq.*, including 29 USC Sec. 211(c) and 215 (a).

115.   Here, Plaintiff and the inside sales representatives are not technically working "off the clock" as Defendants never had any time clock.

116.   Defendant was well aware that in order to meet quotas and goals, inside sales representatives would have to routinely work overtime hours, and that the inside sales rep position was simply not a 40 hour per week job.

117.   To summarize, Ninja has willfully and lacking in good faith, violated the FLSA by failing to pay overtime premiums to ISR.

118.   As a result of Ninja's willful violations of the FLSA, Plaintiff and the proposed putative class of similarly situated have suffered economic damages by their willful failure to pay overtime compensation in accordance with FLSA §207 and their created and maintained unlawful pay practices.

119.   Due to Ninja's willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to *29 U.S.C. §255(a)*.

120.   As a result of Ninja's unlawful acts and pay practices complained of herein, Plaintiff and all other similarly situated present and former employees working as inside sales representatives under various job titles, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime

wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to *29 U.S.C. §216(b)*, as well as injunctive relief pursuant to *29 U.S.C. §217*.

## COUNT II

## FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED IN VIOLATION OF 29 CFR PART 516 AND THE  FLSA

121.   Plaintiff adopts and re-alleges the foregoing paragraphs 1 through 95 as if fully asserted herein.

122.   All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

123.   Evidence reflecting the precise number of overtime hours worked by Plaintiff and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

124.   However, and to the extent records are unavailable, Plaintiff and members of the Class may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

125.    With respect to an employee subject to the FLSA provisions, the following records must be kept:   Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age; Hour and day when workweek begins;   Regular hourly pay rate for any week when

overtime is worked;   Total hours worked each workday and each workweek;   Total daily or weekly straight-time earnings;   Total overtime pay for the workweek; Deductions from or additions to wages;  Total wages paid each pay period; and  Date of payment and pay period covered

126.   Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  See, 29 U.S.C. §215(a)(5); See also, *Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792 (10th Cir. 1976).

127.   Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the FLSA.   An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked.  See *Wirtz v. First State Abstract Ins. Co.*, 362 F.2d 83 (8th Cir. 1966); *Boekemeier v. Fourth Universalist Soc'y*, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

128.   An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  See *Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 n.9 (7th Cir. 1999), citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

129.  Defendant has failed to accurately record, track, and report the Plaintiff's work hours, and for the Class of similarly situated members' time and

work hours as required under the FLSA.

130.   Defendant has failed to make, keep, and preserve records, with respect to each of its employees records sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR §516.2 and 29 U.S.C. §§211, 216 and related laws.

131.   Defendant's time records should be declared inaccurate, unreliable, and excluded from consideration by this Court, and Defendant should then have to prove the actual hours worked pursuant to *Anderson v. Mt. Clemens Pottery Inc.*

132.   Even assuming arguendo Defendant was relying upon the 207i Retail Exemption, Defendant's pay practices failed to record and make a notation during any workweeks and pay periods on any pay records that it was applying the 207i exemption.

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated past and present inside sales representatives who worked for Defendant in the 3 years preceding the filing of this complaint to the present, seek the following relief:

a.   Designation of this action as a collective action.

b.   That Plaintiff be authorized to give notice of this collective action, or that this Court issue such notice at the earliest possible time; to all past and present inside sales representatives employed by Ninja at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class;

c.      Designate the Named Plaintiff as Representatives of the Collective or Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

d.      That all past and present inside sales representatives be informed of the nature of this collective action, and similarly situated employee's right to join this lawsuit if they believe that they were or are misclassified as an exempt employee;

e.      That the Court find and declare Defendant in violation of the overtime compensation provisions of the FLSA;

f.      That the Court find and declare Defendant's violations of the FLSA were and are willful;

g.      That the Court enjoin Defendant, Pursuant to *29 U.S.C. § 217*, from withholding future payment of overtime compensation owed to members of the Plaintiff Class;

h.      That the Court award to Plaintiff and the Plaintiff Class, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

i.      That the Court award Plaintiff and all other persons who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

j.      That the Court award Plaintiff a Class Representative service fee award for the justice they sought out for so many and their services in this case as representatives for the putative class and to their counsel;

k.      That the Court issue in order of judgment under 29 U.S.C 216-17, 28

U.S.C. 2201 and 2202 finding that the Defendant unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendant from further violating the FLSA;

l.     That the Court Award Pre-judgment and post-judgment interest, as provided by law, and;

m.    That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: March 8, 2022.

*/s/Mitchell Feldman, Esq.*
Feldman Legal Group
FL Bar#: 0080349
**6916 W. Linebaugh Ave #101**
Tampa, Fl 33625
Tele: (813) 639-9366
Fax: (813) 639-9376
mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff and the class of*
*Similarly situated*