UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KYLE VAN VLACK, *Individually and on behalf of all Others similarly situated*,

    Plaintiff,

v.                                               Case No.: 8:22-cv-00539-SDM-AEP

NINJARMM, LLC, a foreign
for profit Corporation, dba NINJAONE

    Defendant.
_____/

**JOINT MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT**

Plaintiff, KYLE VAN VLACK, and Opt-In Plaintiffs (individually "Plaintiff" or together with Opt-In Plaintiffs, the "Plaintiffs"), together with Defendant NINJARMM LLC ("Defendant") (collectively, "the Parties"), jointly move the Court to approve the Parties' settlement agreement related to Plaintiffs' claims brought under the Fair Labor Standards Act ("FLSA"). The Parties have negotiated the terms of the settlement agreement at arm's length and those terms are mutually satisfactory and reasonable. The Court's approval of the settlement agreement[1] and entry of an Order dismissing Plaintiffs' Complaint, with prejudice, will consummate the agreement between the Parties.

---

[1] A copy of the Settlement Agreement is attached as Exhibit "A" to this briefing.

**INTRODUCTION**

1. On March 8, 2022, Plaintiff filed his Complaint alleging violations of overtime provisions of the FLSA [DE 1]. Plaintiff sought relief on behalf of himself and all others similarly situated, claiming that all "SDRs" working for Defendant were misclassified as exempt employees and, therefore, should have been paid premiums for overtime hours worked as required by the FLSA.

2. On May 27, 2022, Plaintiff Van Vlack filed a Motion to Conditionally Certify a Collective Action and Authorize Notice to other SDRs [DE 17]. Defendant filed a response opposing the relief requested by Plaintiff on June 17, 2022.

3. After briefing was completed on Plaintiff's Motion to Conditionally Certify a Collective Action and Authorize Notice, the Court ordered the parties to mediate on or before September 1, 2022. The Parties complied with the Court's Order and mediated the case on August 29, 2022 before experienced employment lawyer and mediator, Carlos Burruezo, Esq.

4. Since the Complaint was filed, 9[2] additional individuals filed Consent to Join Forms with the Court wherein they authorized Kyle Van Vlack to negotiate

---

[2] Discovery revealed that one Opt-In Plaintiff, Lawrence Miccolis [D.E. 16-1], did not work in any week within the 3-year statute of limitations and therefore his claims were time barred. Accordingly, the Parties stipulated that Opt-In Plaintiff Miccolis is not an appropriate party to this action and stipulated to withdrawal

and reach a settlement with Defendant on their behalf and agreed to be bound by the terms of any settlement reached according to the express terms of the Consent to Join Forms. Each of the individuals were former SDRs that were previously or currently employed with Defendant and who also alleged that they were misclassified as exempt employees and routinely worked overtime hours without being compensated for such time.

4. The merits of Plaintiff's FLSA claims in this litigation are in dispute, as are Plaintiff's chances to move forward on a collective basis under § 216(b). Defendant maintains that it did not violate the FLSA and that, even if Plaintiffs could establish liability, the overall value of Plaintiff's claims is far less than what is alleged by Plaintiffs.

5. The Parties have engaged in extensive negotiations during mediation and have exchanged analysis and documentation to allow both Parties a full understanding of the facts of this case. The Parties considered their own risk in further litigating this matter and decided to reach this agreement in compromise of Plaintiffs' claims.

---

and dismissal of his claim from this action. Opt-In Miccolis' voluntary withdrawal of his Consent to Join Form was filed on September 12, 2022 [D.E. 36]

## TERMS OF THE SETTLEMENT AGREEMENT

6.     The Parties have agreed to settle this action and provide for a dismissal of Plaintiffs' claims with prejudice, the detailed terms of which are set forth in the attached Settlement Agreement. The Parties agree that the total settlement amount of $57,705.66 adequately compensates Plaintiffs for their individual FLSA claims.

7.     Each plaintiff will receive the following amount of the total settlement fund:

    Kyle Van Vlack:     $32,000.00

    Jonathan Burke:     $811.27

    Michael Mallamo:   $17,500.00

    Shane Van Vlack:    $3,043.88

    Kathryn Dotson:     $122.83

    Olivia Smith:       $1,300.00

    Joey Taylor:        $66.20

    Kasee Slagle:       $2,006.47

    Melissa Cellurale   $855.01

The total amount for each Plaintiff will be divided into two payments: one representing payment for Plaintiffs' contested claims of unpaid wages paid on an IRS Form W-2 (having all usual taxes and withholdings removed) and another, in

an equal amount for Plaintiffs' contested claims for liquidated damages paid on an IRS Form 1099.

The variation in amount of settlement fund received by each Plaintiff is correlated with each plaintiff's length of employment, hours worked, rates of pay, and the strength of the various defenses that Defendant could raise against them.

8. Plaintiffs' counsel will receive $53,000.00 in attorneys' fees and costs for the work that Plaintiff's counsel did to resolve this case on behalf of Plaintiffs. This amount was negotiated separately from the negotiation of the settlement fund and without regard to the amount paid to Plaintiffs so as not to affect the amount that Defendant agreed to settle each Plaintiff's claims. The amount of attorneys' fees agreed upon by the Parties was based on the reasonable hours worked by Plaintiffs' counsel and a reasonable rate for an attorney with Plaintiffs' counsel's experience in this area of the law.

9. Given the significant risk and expense of continued litigation, and the clear fairness of the compromise, the Parties agree that the Settlement Agreement should be approved by the Court. The Settlement Agreement represents a fair, adequate, and reasonable compromise of the claims at issue in light of the existence of disputed issues of fact, disputed issues of law, and questions of whether the Plaintiffs would obtain favorable judgment at trial.

## MEMORANDUM OF LAW

**I.   THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT BECAUSE IT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS.**

    **A.   The Settlement Meets the Requirements Set Forth in <u>Lynn's Food</u>.**

After scrutinizing this settlement, this Court will find that the Parties' Settlement Agreement is fair, reasonable, and should be approved. The Settlement Agreement resolves a *bona fide* dispute between the Parties with respect to whether the employees at issue are entitled to unpaid overtime compensation for hours worked over 40 in each workweek.

Parties are required to seek court approval of a private settlement of a claim for back wages arising under the FLSA. The Eleventh Circuit has held that:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations.

<u>Lynn's Food Stores, Inc. v. United States Dep't of Labor</u>, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the

> action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Lynn's Food Stores, 679 F.2d at 1354.

Before approving an FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." Id. at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." Id. at 1354.

In determining whether the settlement is fair and reasonable the Court should consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. See Leverso v. South Trust Bank of Ala., Nat.

Assoc., 18 F.3d 1527, 1531 n.6 (11th Cir. 1994).[3] A strong presumption exists to find a settlement fair and reasonable. Hamilton v. Frito-Lay, Inc., 2007 WL 219981, at *2 (M.D. Fla. Jan. 26, 2007).

> 1. **The Settlement Was the Result of Arm's Length Negotiations Free from Collusion**

The settlement reached was the result of hard-fought, adversarial, arm's length negotiations that have taken place over protracted and costly litigation that has been ongoing for over five months. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. Pickett v. IBP, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001). Here the settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion. The Court should find that the settlement was the result of arm's-length bargaining.

Here, the Plaintiffs are each receiving approximately 42% of the hours the Plaintiffs self-estimated for each net workweek they worked. A net workweek counts only weeks where Plaintiffs worked five days in a week. Each Plaintiff is receiving a pro rata share of the overall settlement proceeds based upon the hours

---

[3] See also Dees v. Hydradry, Inc., 2010 WL 1539813, at *8 (M.D. Fla. Apr. 19, 2010); see also Hill v. Florida Indus. Elec., Inc., No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); Pacheco v. JHM Enters., Inc., et al., 2006 WL 948058, at *4 (M.D. Fla. Apr. 12, 2006).

each alleged and taking into consideration the qualifying workweeks for each individual.

## 2. The Complexity, Expense and Duration of Litigation

The complexity, expense, and length of future litigation also militate in favor of this settlement. This case was filed on March 8, 2022, and settlement was preceded by more than five and one-half months of litigation, including discovery commenced by the Plaintiffs. During the pendency of the case, the Parties engaged in formal discovery, including exchanging thousands of pages of personnel files, payroll, emails, electronically stored data and information, and thousands of electronically stored files and spreadsheets.

If the Parties continued to litigate this matter, they would be forced to engage in further costly and protracted discovery, litigation, and summary judgment briefing. Further, if conditional certification was granted, not only would many more plaintiffs potentially join this action, but the scope of discovery and amount of time needed would substantially increase on both sides. To prove their claims, Plaintiffs would incur extensive costs involving numerous depositions and other discovery costs. Plaintiffs would also likely need to incur costly forensic computer analysis and costly ESI discovery. Further, the Parties would likely require one or more experts related to the underlying claims and/or defenses.

Thus, settlement is a reasonable means for both Parties to minimize their future risks and litigation costs, which could reach over $500,000 in attorneys' fees and perhaps upwards of another $40,000 in litigation costs and expenses (not including expert witness costs/fees) by the time the case proceeded to a lengthy jury trial. Additionally, after careful review of the records and discussions with counsel, Plaintiffs believe they are receiving a fair and reasonable amount of wages and do not wish to continue with costly, risky litigation without any real potential to recover additional sums. Plaintiffs' Counsel likewise believes the resolution is fair and reasonable taking into account the risks, burdens of proof, and the records produced to date. Plaintiffs also carry the risk of having to pay Defendant's cost and expenses if they did not prevail - risks Plaintiffs naturally wish to mitigate and avoid.

### 3. The Stage of Proceedings at Which The Settlement Was Achieved.

The Parties reached a settlement relatively early on in this action while conditional certification was still pending, but after Defendant responded to numerous written discovery requests and produced thousands of documents in response. Further, even at this early stage, more than 5.5 months of intense, time consuming, contentious litigation occurred. Counsel for the Parties spent significant time and effort advocating legal theories, exchanging discovery, and modeling the potential damages at issue in this case. The Parties exchanged

documents, damage calculations, compensation information, and engaged in a detailed evaluation of Defendant's compensation practices for Plaintiffs.

There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. Resolution at this stage saves the potential for costly litigation while still having allowed sufficient time to permit a detailed investigation into the claims and defenses of both Parties.

### 4. The Likelihood of Success at Trial, Range of Possible Recovery, and Counsel's Opinions.

The Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial. First, it was uncertain whether the court was going to grant conditional certification. Second, Plaintiffs would have faced a risk at trial of not prevailing on their wage claims because of claimed defenses. Further, if the Plaintiffs could not prove that Defendant willfully violated the FLSA by classifying them as exempt employees, for some plaintiffs, they would lose all of their eligible wages with the two-year statute of limitations, and many more would lose a substantial amount of their wages at issue.

Second, in the damage analysis conducted by Plaintiffs' Counsel, each Plaintiff is credited with their own respective overtime wages based upon approximately 42% of their individual estimated hours worked for each qualified week during the three-year statute of limitations period. To reach the final settlement amount, Plaintiffs then discounted the wages at issue by factoring in

the risks of Defendant's arguments and evidence to be presented at trial, to come up with the discounted damage analysis. It is important to note that the final settlement amounts reflect a payment of unpaid overtime hours alleged during the extended three-year statute of limitations period based solely upon Plaintiffs' estimation. But if the case were tried, Defendant would have the opportunity to establish that the number of hours worked per week was significantly less than the Plaintiffs' approximated hours, which could substantially reduce Plaintiffs' damages. Furthermore, if Defendant prevailed on defenses, the amount could again be reduced significantly.

There is in this case, like most disputed claims and lawsuits, the possibility that Plaintiffs would recover $0 and worse must pay the other side many thousands of dollars in litigation costs. Ultimately, the Parties agreed to an amount of $57,705.66 representing a reasonable compromise of all the Plaintiffs' overtime wage claims. As all the Plaintiffs were salaried employees, these wages were based upon the use of the fluctuating workweek formula found in 29 C.F.R. 778.114.

Thus, the Parties agree that these sums fall within the range of reasonable expectations of the wages the Plaintiffs might be awarded by a jury and thus constitutes a fair and reasonable compromise.

### B. The Court Should Approve the Amount of Attorneys' Fees and Costs.

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorney's fees. See <u>Helms v. Central Fla. Reg. Hosp.</u>, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); <u>Strong v. BellSouth Telecomms., Inc</u>., 137 F.3d 844, 849-50 (5th Cir. 1998). Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." <u>Bonetti v. Embarq Mgmt. Co.</u>, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

In this case, the Settlement Agreement provides for the Defendant to pay Plaintiffs' attorneys' fees incurred as part of the resolution of Plaintiffs' claims in the amount of $53,000.00 in fees and $422 in advanced taxable and incurred costs and expenses consisting of filing fees and process server charges. Through the separate negotiations with Defendant, by and through their experienced and skilled attorneys, and the assistance of experienced employment law mediator, Carlos Burruezo, Esq, the Parties reached a negotiated compromise as to the sum

of attorneys' fees and costs to be paid by the Defendant without regard to the amount paid to Plaintiffs.

Notably, Plaintiffs' counsel agreed to a reduced fee amount from what was actually incurred in order to obtain this settlement for the Plaintiffs and bring about a resolution for the Plaintiffs, who likewise wanted to end the litigation and avoid further delays. Defendant understands it could have sought the Court to determine a reasonable fee, but that doing so was not in its best interests because: a.) it prolonged the litigation and would cause them to incur more in defenses fees; and b.) the Court could award the full lodestar or a substantially higher fee than they negotiated with Plaintiffs' counsel. Defendant is satisfied it negotiated a reasonable compromise and is paying a reasonable attorney's fee given the 5.5 months of hard-fought litigation. Defendant also agrees that the costs being reimbursed are properly charged as litigation expenses, and only include filing fees and service of process charges.

The Parties specifically stipulated in the Settlement Agreement that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances. Further, the sum agreed upon is a voluntary reduction in the amount of fees actually incurred by Plaintiffs' attorneys not including full day and legal fees incurred at mediation and in preparing and drafting the settlement agreement and related documents. Moreover, Plaintiffs' counsel must counsel 9

Plaintiffs going forward about the settlement, which is time that Plaintiffs' counsel has voluntarily abandoned to resolve the case even though it could be sought from the Court.

Both before and after commencing this action, and then continually over the following 5.5 months of litigation, Plaintiffs' counsel spent a significant amount of time in the case preparing the pleadings, reviewing documents, preparing damages models, analyzing records, researching applicable disputed legal issues, engaging in formal discovery; and preparing for and attending a full day mediation with Defendant's counsel that ultimately resulted in this settlement.

Further, at every step of the litigation, Plaintiffs' counsel was required to communicate with numerous Plaintiffs and witnesses, further increasing the number of hours expended in this matter. Plaintiffs' Counsel reviewed and reconciled over 10,000 pages and hundreds of electronically transmitted files, spread sheets and records to create a meticulous damages model which included various scenarios. Ultimately, Plaintiff counsel's damages model was presented to Defendant which were relied on and examined by both parties in reaching a settlement that compensates a reasonable amount to each Plaintiff.

Based upon Plaintiffs' counsel's hourly rates as awarded in other FLSA actions, and the reasonable rates for similarly experienced attorneys in FLSA collective actions in this district, hourly rates of $400.00 for Attorney Mitchell

Feldman and $325.00 for Attorney Jason Quintus were utilized. These rates have previously been declared as reasonable and are not challenged by Defendant. Further, the fact that Plaintiffs' counsel agreed to a significantly reduced attorneys' fee from what was actually incurred demonstrates that no conflict of interest adversely affected the Plaintiffs' recovery under the Settlement Agreements.

## CONCLUSION

The Parties voluntarily agreed to the terms of their settlement. All Parties were counseled and represented by their respective experienced attorneys throughout the litigation and settlement process. Accordingly, the Parties jointly and respectfully request that this Court approve the terms of the Settlement Agreement and dismiss this case with prejudice.

Respectfully Submitted September 21, 2022.

s/ *Mitchell L. Feldman, Esq.*
Michel L. Feldman, Esquire
FBN: 0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave, Suite 101
Tampa, FL 33725
Telephone: (813) 639-9366
Email: mfeldman@flandgatrialattorneys.com
*ATTORNEY FOR PLAINTIFFS*

s/ *Christopher C. Johnson, Esq*
Christopher C. Johnson, Esq.
FL Bar No.: 0105262
cjohnson@fordharrison.com
Emily Chase-Sosnoff
Florida Bar No.: 1013901
sosnoff@fordharrison.com
**FORDHARRISON LLP**
401 East Jackson Street – Suite 2500
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899